**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

PATRICK COOPER,                          )

                Plaintiff,            )     No. 25 Civ. 4758 (LAK)

           -against-                   )

RICCARDO TISCI,                          )

              Defendant.           )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )


**DEFENDANT RICCARDO TISCI'S MEMORANDUM OF LAW**

**<u>IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT</u>**


DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-768-6700
Fax: 212-768-6800

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

LEGAL STANDARD ............................................................................................ 7

ARGUMENT ..................................................................................................... 8

I.      THE AC FAILS TO STATE A CLAIM FOR "BATTERY, SEXUAL ABUSE,
        AND FORCIBLE TOUCHING" (FIRST CAUSE OF ACTION) ................................... 8

        A.      As Relates to the Alleged Drugging and Sexual Assault, the AC Fails to
                State a Claim for Battery......................................................................... 8

        B.      The AC Fails to State a Claim for "Sexual Assault" or "Forcible
                Touching". .............................................................................................. 17

II.     AS TO THE ALLEGATIONS OF SEXUAL ASSAULT, THE AC FAILS TO
        STATE A CLAIM FOR ASSAULT (SECOND CAUSE OF ACTION)......................... 19

III.    THE AC FAILS TO STATE A CLAIM FOR FALSE IMPRISONMENT
        (THIRD CAUSE OF ACTION) ..................................................................... 21

IV.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
        VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 10-1101 ET
        SEQ. (FOURTH CAUSE OF ACTION) ........................................................... 24

V.      THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
        INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FIFTH CAUSE
        OF ACTION) ........................................................................................... 27

VI.     THE AC FAILS TO STATE A CLAIM FOR ATTORNEYS' FEES (SIXTH
        CAUSE OF ACTION) ................................................................................ 31

VII.    THE AC FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES
        (SEVENTH CAUSE OF ACTION) .................................................................. 31

CONCLUSION ................................................................................................. 32

## TABLE OF AUTHORITIES

**Cases**

*Abacus Fed. Sav. Bank v. Lim*,
    75 A.D.3d 472 (1st Dep't 2010) .........................................................................................13

*Aetna Life Ins. Co v. Fast Lab Technologies, LLC*,
    2025 WL 2463706 (S.D.N.Y. Aug. 27, 2925) ....................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................... *passim*

*Austin v. Ford Models, Inc*.,
    149 F.3d 148 (2d Cir. 1998).............................................................................................21

*Baldwin v. TMPL Lexington LLC*,
    2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) ................................................................25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................................... *passim*

*Bigio v. Coca-Cola Co*.,
    675 F.3d 163 (2d Cir. 2010)............................................................................................13

*Bouveng v. NYG Capital LLC*,
    2015 WL 3503947 (S.D.N.Y. June 2, 2015) ...........................................19, 28, 30

*Bower v. Weisman*,
    639 F.Supp. 532 (S.D.N.Y. 1986) ..................................................................................22

*Brass v. Am. Film Techs., Inc*.,
    987 F.2d 142 (2d Cir.1993)...............................................................................................4

*Breest v. Haggis*,
    180 A.D.3d 83 (1st Dep't 2019) ...............................................................................24, 26

*Bright Kids NYC Inc. v. Kelly*,
    2020 WL 6891814 (S.D.N.Y. Nov. 24, 2020) ..................................................................8

*Brodie v. Green Spot Foods, LLC*,
    503 F.Supp.3d 1 (S.D.N.Y. 2020) ....................................................................................8

*Butler v. Delaware Otsego Corp*.,
    203 A.D.2d 783 (3d Dep't 1994)..............................................................................29, 31

*Cellamare v. Millbank, Tweed, Hadley & McCloy LLP*,
    2003 WL 22937683 (E.D.N.Y. Dec. 2, 2003) ...........................................................21, 22

*Chechele v. Morgan Stanley*,
  896 F.Supp.2d 297 (S.D.N.Y. 2012)......................................................................4

*Conboy v. AT&T Corp.*,
  241 F.3d 242 (2d Cir. 2001)..............................................................................27

*Cuellar v. Love*,
  2014 WL 1486458 (S.D.N.Y. Apr. 11, 2014).............................................27, 28

*D'Alessandro v. City of New York*,
  713 F. App'x 1 (2d Cir. 2017) ............................................................................8

*Doe v. Gooding*,
  2021 WL 5991819 (S.D.N.Y. July 29, 2021) ....................................................24

*Endobotics, LLC v. Fujifilm Healthcare Americas Corp.*,
  2025 WL 1549027 (S.D.N.Y. May 29, 2025) ......................................................8

*Gelboim v. Bank of America Corp.*,
  823 F.3d 759 (2d Cir. 2016)..............................................................................21

*Grande v. Hennepin Cnty. Sheriffs Dept.*,
  2025 WL 1195584 (D. Minn. Feb. 13, 2025) .....................................................15

*Greystoke v. Vice*,
  2017 WL 3017399 (W.D. Wa. June 6, 2017) .....................................................15

*Halebian v. Berv*,
  644 F.3d 122 (2d Cir. 2011)................................................................................4

*Hall v. EarthLink Network, Inc.*,
  396 F.3d 500 (2d Cir. 2005)..............................................................................18

*Hansel v. Sheridan*,
  991 F. Supp. 69 (N.D.N.Y. 1998) ................................................................29, 31

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
  2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)...................................................26

*Higgins v. Hamilton*,
  18 A.D.3d 436 (2d Dep't 2005) ..........................................................................8

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) .......................................................................................27

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F.Supp.3d 429 (S.D.N.Y. 2018)..................................................................26

*Jaffe v. Capital One Bank*,
  2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ................................................16, 31

*Jeffreys v. Griffin*,
  1 N.Y.3d 34 (2003) .................................................................................9

*Jenkins v. County of Washington*,
  126 F.Supp.3d 255 (N.D.N.Y. 2015).........................................................9

*Klein v. Metro. Child Servs., Inc.*,
  954 N.Y.S.2d 559 (2d Dep't 2012)...........................................................28

*Kravtsov v. Town of Greenburgh*,
  2012 WL 2719663 (S.D.N.Y. July 9, 2012) ...........................................21, 23

*La Porta v. Alacra*,
  142 A.D.2d 851 (1st Dep't 2016)..............................................................31

*Lan Sang v. Ming Hai*,
  951 F.Supp.2d 504 (S.D.N.Y. 2013).....................................................28, 30

*LaNasa v. Steine*,
  2025 WL 893456 (2d Cir. March 24, 2025) ..............................................27

*Leonard v. Reinhardt*,
  20 A.D.3d 510 (2d Dep't 2005)............................................................29, 31

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
  935 F.Supp.2d 666 (S.D.N.Y. 2013).........................................................21

*In re Livent, Inc. Noteholders Secs. Litig.*,
  151 F.Supp.2d 371 (S.D.N.Y. 2001)..................................................14, 21, 23

*Lyman v. City of N.Y.*,
  1997 WL 473976 (S.D.N.Y. Aug. 20, 1997) .............................................28

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
  256 A.D.2d 269 (1st Dep't 1998) .........................................................29, 31

*Medcalf v. Walsh*,
  938 F. Supp. 2d 478 (S.D.N.Y. 2013)........................................................28

*Mendoza v. Cornell Univ.*,
  2021 WL 918622 (S.D.N.Y. Mar. 10, 2021) ........................................14, 21, 23

*Ming v. Brouillete*,
  2023 WL 5779558 (N.D.N.Y. Apr. 7, 2023) ..............................................18

*Moore v. City of New York*,
2024 WL 3361193 (S.D.N.Y. July 10, 2024) ........................................................9

*Murphy v. Certain*,
217 A.D.3d 456 (1st Dep't 2023) ........................................................................31

*Naughright v. Weiss*,
826 F.Supp.2d 676 (S.D.N.Y. 2011) ............................................................8, 9, 21

*O'Hara v. Cohen-Sanchez*,
2025 WL 931282 ................................................................................................31

*Parker v. Rubin*,
2019 WL 646405 (Sup. N.Y. Cnty Feb. 13, 2019) ..............................................18

*Parvi v. City of Kingston*,
41 N.Y.2d 553 (1977) ........................................................................................23

*Patterson v. Patterson*,
2019 WL 1284346 (S.D.N.Y. Mar. 20, 2019) .....................................................18

*Peterec v. Hilliard*,
2013 WL 5178328 (S.D.N.Y. Sept. 16, 2013) .....................................................18

*Poindexter v. EMI Record Grp. Inc.*,
2012 WL1027639 (S.D.N.Y. Mar. 27, 2012) ............................................5, 14, 21

*Popal v. Slovis*,
2015 WL 10687614 (S.D.N.Y. Apr. 28, 2015) ....................................................18

*Rivers v. Towers, Perrin, Forster & Crosby Inc.*,
2009 WL 817852 (E.D.N.Y. Mar. 27, 2009) .................................................28, 31

*Rocanova v. Equitable Life Assurance Soc. of U.S.*,
83 N.Y.2d 603 (1994) ........................................................................................31

*Rockland Vending Corp. v. Creen*,
2009 WL 2407658 (S.D.N.Y. Aug. 4, 2009) .................................................21, 23

*Roper v. Hynes*,
2006 WL 2773032 (S.D.N.Y. Sept. 27, 2006) ...............................................28, 31

*Rossbach v. Montefiore Med. Ctr.*,
2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) .......................................24, 25, 26, 27

*Salmon v. Blesser*,
802 F.3d 249 (2d Cir. 2015) ...............................................................................29

*Sarlat v. State*,
119 Misc.2d 369 (Ct. Claims 1983)....................................................................................10

*Sharpe v. City of New York*,
560 F. App'x 78 (2d Cir. 2014) .........................................................................................8

*Specht v. City of N.Y.*,
15 F.4th 594 (2d Cir. 2021) .............................................................................................28

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 122 S.Ct. 992 (2002)................................................................................21

*Tantaros v. Fox News Network, LLC*,
2018 WL 2731268 (S.D.N.Y. May 18, 2018) .................................................................28

*TufAmerica, Inc. v. Diamond*,
968 F.Supp.2d 588 ...............................................................................................5, 14, 21

*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*,
994 F.2d 105 (2d Cir. 1993)..........................................................................................8, 19

*Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*,
2014 WL 3857053 (S.D.N.Y. Aug. 5, 2014) ...................................................................8

*Watkins v. Harlem Center for Nursing and Rehabilitation, LLC*,
2021 WL 4443968 (S.D.N.Y. Sept. 28, 2021)................................................................31

*Williams v. New York State*,
2025 WL 2452219 (S.D.N.Y. Aug. 26, 2025) .................................................................18

**Statutes**

New York Penal Law
§ 130.................................................................................................................19, 24, 25
§ 130.52..........................................................................................................17, 18, 19
§ 130.55..........................................................................................................17, 18, 19
§ 130.60..........................................................................................................17, 18, 19
§ 130.65..........................................................................................................17, 18, 19

**Rules and Regulations**

Civil Practice Law and Rules
Rule 213-c .....................................................................................................................18, 19

Federal Rules of Civil Procedure
Rule 12(b) ......................................................................................................................4
Rule 12(b)(6).................................................................................................................1, 7

New York City Administrative Code
§ 10-1101 et seq. ................................................................................................6, 24

**Other Authorities**

Drug-Facilitated Sexual Assault, U.S. Dep't of Justice, available at
https://www.dea.gov/sites/default/files/2022-
01/Drug%20Facilitated%20Sexual%20Assault.pdf ...............................................10

Defendant Riccardo Tisci ("Defendant") submits this memorandum of law in support of his motion to dismiss Counts 1-2 of the Amended Complaint ("AC") in part, and Counts 3-7 of the AC in their entirety, all with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

Following amendment, Plaintiff Patrick Cooper ("Plaintiff") now asserts seven causes of action against Defendant, a well-known fashion designer, stemming from their alleged drinking at a bar in June 2024. Despite the arguments raised in Defendant's motion to dismiss the Original Complaint (Dkt Nos. 8-10), Plaintiff's claims remain primarily predicated on the bare assertions that, while at a bar during International LGBT Pride Weekend, Defendant slipped an unidentified "date-rape" drug into Plaintiff's drink, thereby incapacitating him, and then later, in some unspecified way, "sexually assaulted" him, while he was unconscious, at Defendant's home. In the AC, Plaintiff has added an allegation that, upon waking, he found Defendant kissing him.

Those allegations–in particular, the allegations of drugging and sexual assault–accuse Defendant of extremely serious misconduct and, predictably, they have been picked up on by the press and widely circulated on the Internet. The publicity surrounding these allegations have already caused, and continue to cause, Defendant substantial damage. On a personal level, the toll those allegations have taken on Defendant is devastating. Allegations, of course, are easy to make—but here, the truth is very different. Defendant denies any and all of the misconduct of which he is accused and, if this matter proceeds further, is prepared to demonstrate the absolute lack of merit to Plaintiff's claims. However, there is no reason for this matter to proceed any

---

[1] Also submitted herewith is the Declaration of Anthony B. Ullman, dated September 5, 2025 ("Ullman Dec.").

further as to the vast bulk of Plaintiff's claims, including the claims of drugging and sexual assault, because Plaintiff has failed to state viable claims under the standards of *Iqbal* and *Twombly*.

The AC's core allegations–that Defendant drugged Plaintiff at a bar and then sexually assaulted him while he was unconscious at Defendant's home–are not backed by any factual allegations supporting an inference that either happened.  Instead, the AC makes clear that Plaintiff's allegations of drugging and sexual assault are rank speculation and suspicion. Plaintiff does not, and cannot, claim actual knowledge of Defendant's directly or indirectly placing a drug into his drink.  Nor does he cite any medical or forensic evidence supporting his claim of "drugging," but rather acknowledges that no such evidence exists.  Plaintiff likewise concedes that he has no actual knowledge of the alleged sexual assault, and cites no medical or forensic evidence showing that a sexual assault took place.  Moreover, the very reports on which Plaintiff relies either fail to substantiate that Plaintiff was sexually assaulted by Defendant or affirmatively negate a contention that any such assault took place.

Plaintiff claims, "upon information and belief," that the alleged drugging, purportedly leading to the posited sexual assault, must have occurred because, he asserts, he had "never before blacked out in such an incapacitating manner."  However, even taking that self-serving assertion at face value, the **factual** allegations of the AC are equally compatible with lawful conduct on the part of Defendant, *e.g*., that (a) Plaintiff became incapacitated at the bar because he had too much to drink, too little to eat, experienced some sort of adverse reaction to something he consumed on the night in question or was slipped a drug by an unknown third party and (b) Plaintiff slept off his incapacitation at Defendant's home, **without** being sexually assaulted.  In short, the assertions that Defendant drugged Plaintiff and then sexually assaulted

him are rank speculation, bereft of any factual foundation, which is insufficient under *Iqbal* and *Twombly*.

As set out below, Count 1 of the AC ("battery, sexual abuse, and forcible touching") fails to state a claim as relates to the allegations of drugging and sexual assault, and fails to state a claim for "sexual abuse" or "forcible touching" as relates to the allegations of kissing.[2]  Count 2 of the AC ("assault") fails to state a claim as relates to the allegations of drugging and sexual assault. Counts 3-7 (respectively, "false imprisonment," "violation of New York City's Victims of Gender-Motivated Protection Law," "intentional infliction of emotional distress," "attorney's fees" and "punitive damages") are dismissible in their entirety.

## STATEMENT OF FACTS

Taking, as for present purposes we must, the well-pled allegations of the AC as true, the facts relevant to this motion may be summarized as follows.

Plaintiff alleges that he was introduced to Defendant by his friend Michael Alexander ("Alexander"), in the early morning of June 30, 2024, and then drove with Defendant, and a friend of Defendant named Alessandro Mahmood ("Mahmood") to the 2 Sisters 4 Brothers Restaurant and Lounge, located at 355 East 116th Street, New York, New York ("2 Sisters"). (AC, ¶¶ 7, 12-16.) ██████████████████████████████ ██████████████████████████ (Ullman Dec., Ex. B, at COOPER 0016; Ullman Dec., Ex. C, at COOPER 0167).[3]

---

[2] In this motion, Defendant does not challenge that, as relates to the alleged "kissing," Plaintiff has arguably pled allegations sufficient to state claims for assault and battery.  In so doing, Defendant does not in any way concede the truth of those allegations, which will be contested at a later date.

[3] The police and hospital reports attached, respectively, as Exhibits B and C to the Ullman Declaration, were provided by Plaintiff to Defendant, and designated as confidential, pursuant to a Stipulation for the Production and Exchange of Confidential Information entered into prior to

Plaintiff states that, while at 2 Sisters, he had one drink which was delivered to him by Mahmood.  (AC, ¶¶  31-35.)  Plaintiff asserts that, at the same time as, or shortly after, Alexander told the group that he was going out to retrieve something from his car, Defendant initiated a conversation with Plaintiff (*id.*, ¶ 43.)  Plaintiff alleges that, "upon information and belief," Defendant, or Mahmood acting at Defendant's direction, had spiked Plaintiff's drink with some incapacitating drug (*id.*, ¶ 44).  He further alleges that Defendant had "timed" the initiation of the conversation to "coincide" with Alexander's departing from the group and leaving Plaintiff alone with Defendant and Mahmood, with Plaintiff  "continuing to drink his drink" (*id.*, ¶ 43).  Plaintiff asserts that he blacked out minutes after Alexander left the bar and that, when Alexander returned 15 minutes later, he found Plaintiff, Mahmoud and Defendant gone.  (*Id.*, ¶¶ 53-55.)  There is no allegation that Defendant had any prior knowledge that Alexander would be stepping outside the bar or any knowledge as to how long, after Alexander had done so, he would be gone.

Without any factual basis whatsoever, Plaintiff alleges that Defendant "used" "date rape drugs," such as Rohypnol ("roofies"), gamma hydroxybutyrate ("GHB"), gamma-butyrolactone ("GBL") and ketamine, on him (AC, ¶ 9), while conceding that he has no medical or forensic evidence of that (*id.*, ¶89).  Plaintiff further concedes that he did not see anyone spike his drink and that his drink did not have an abnormal or strange taste or appearance (*id.*, ¶¶ 50-51).  While Plaintiff conclusorily asserts that "[t]he only people that had access to Plaintiff's drink were

---

removal and are accordingly being filed herewith under seal.  Also, in the AC, Plaintiff relies on his visits to the hospital, his reports to the police and the testing performed in connection therewith.  (AC ¶¶ 88-92, 95.)  Therefore, the Court can consider the hospital and police reports on this Rule 12(b) motion.  *See*, *e.g.*, *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011); *Brass v. Am. Film Techs., Inc*, 987 F.2d 142, 150 (2d Cir.1993); *Aetna Life Ins. Co v. Fast Lab Technologies, LLC*, 2025 WL 2463706, *3 (S.D.N.Y. Aug. 27, 2925); *Chechele v. Morgan Stanley*, 896 F.Supp.2d 297, 302 (S.D.N.Y. 2012).

Defendant and Mahmood" (*id.*, ¶ 38), that assertion lacks any factual foundation, as Plaintiff does not allege that he had his drink within his field of unobstructed vision at all times from when it was made by the bartender (who necessarily had "access" to it) to when his "symptoms of incapacitation" allegedly began (*id.*, ¶ 52).

Plaintiff alleges that he remained "blacked out" until he later woke up several hours later at Defendant's home.  (AC, ¶¶ 53, 64-65.)  He alleges that, when he woke up, he was naked and Defendant was "forcibly kissing" him.  (*Id.*, ¶¶ 65)  Plaintiff alleges that, while he was blacked out, he was sexually assaulted, in some unspecified way, by Defendant (*id.*, ¶¶ 96, 104, herein after referred to as the "sexual assault").

Plaintiff alleges that, later on June 30, 2024, he went to a hospital and "reported that he may have been drugged and sexually assaulted, and asked to be tested," but that the hospital did not conduct a rape examination (AC, ¶¶ 88, 89).  ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████ (Ullman Dec., Ex. C, at COOPER 0167, 170, ) ████████████████████████

██████████████████████████ (*Id.,* at COOPER 0171)

████████████████████████████████████████████

████████████████████████. (AC, ¶ 90, Ullman Dec., Ex. B, at COOPER 0015) █████████

█████████████████████████████████████████████(Ullman Dec., Ex.

B, at COOPER 0015)

---

[4] "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*,2012 WL1027639, *2 (S.D.N.Y. Mar. 27, 2012); *TufAmerica, Inc. v. Diamond*, 968 F.Supp.2d 588, 592 S.D.N.Y. (2013).

On July 3, 2024, Plaintiff returned to the hospital and had a rape examination.  (AC, ¶ 92; Ullman Dec., Ex. C, at COOPER 0125) ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

(Ullman Dec., Ex. C, at COOPER 0128, 0131).  ████████████████████████████████

████████████████████████████████████████████████

████████ (*Id*., at COOPER 0131) ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████ (*Id*., at COOPER 0137)

DNA testing on Plaintiff and his underwear was also performed.  (AC, ¶ 95; Ullman Dec., Ex. B, at COOPER 0049-0050) ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ (Ullman Dec., Ex. B, at COOPER 0049-0050)

Plaintiff asserts claims for "battery, sexual abuse, and forcible touching" (AC, ¶¶ 103-08), assault (*id*., ¶¶ 109-12), false imprisonment (*id*., ¶¶ 113-19), violation of the Gender-Motivated Violence Act, NYC Admin. Code §§ 10-1101 ff. ("GMVA") (*id*., ¶¶ 120-25), intentional infliction of emotional distress (*id*., ¶¶ 126-29), attorneys' fees (*id*., ¶¶ 130-31) and punitive damages (*id*., ¶¶ 132-34).  The cause of action for "battery, sexual abuse, and forcible touching" and assault should be dismissed (a) in its entirety, as it relates to the allegations of

[5] ████████████████████████████████████████████ (Ullman Dec., Ex. C, at COOPER 0126, 0130)

drugging and/or sexual assault and (b) in part (on the claims of "sexual abuse" and "forcible touching"), as it relates to the allegation of "kissing." The cause of action for "assault" should be dismissed as it relates to the allegations of drugging and sexual assault. The remaining five causes of action should be dismissed in their entirety. All such dismissals should be with prejudice.

## **LEGAL STANDARD**

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009). While the well-pled facts contained in a complaint are assumed to be true, courts are not bound to accept as true mere "labels and conclusions," *id.*, or a "legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Likewise, "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Even if well-pled, the allegations of a complaint must contain non-conclusory factual content that "nudge[s] the [Plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974, and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Where the well-pled facts support no more than "the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950, and are also compatible with lawful conduct, *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 567, 127 S. Ct. at 1971, the complaint must be dismissed.

While a complaint may satisfy the plausibility standard from *Twombly* and *Iqbal* by pleading facts upon information and belief, a plaintiff "cannot merely plop 'upon information

and belief' in front of a conclusory allegation and thereby render it non-conclusory."

*Endobotics, LLC v. Fujifilm Healthcare Americas Corp*., 2025 WL 1549027, at *2 (S.D.N.Y.

May 29, 2025); *see also D'Alessandro v. City of New York,* 713 F. App'x 1, 7 (2d Cir. 2017)

(affirming dismissal of claims consisting of conclusory allegations made on information and

belief); *Sharpe v. City of New York*, 560 F. App'x 78, 80 (2d Cir. 2014) (same).

Rather, allegations made on "information and belief" must be "accompanied by a

statement of the facts upon which the belief is founded, and cannot rest on pure speculation and

conjecture."  *Bright Kids NYC Inc. v. Kelly*, 2020 WL 6891814, at *4 (S.D.N.Y. Nov. 24,

2020); ); *Brodie v. Green Spot Foods, LLC*, 503 F.Supp.3d 1, 13 (S.D.N.Y. 2020) (allegations

made on information and belief insufficient where alleged supporting facts did not lead to a

plausible inference that the belief was true); *Vista Food Exch., Inc. v. Champion Foodservice,

L.L.C.*, 2014 WL 3857053, at *9 (S.D.N.Y. Aug. 5, 2014).

## ARGUMENT

### I.  THE AC FAILS TO STATE A CLAIM FOR "BATTERY, SEXUAL ABUSE, AND FORCIBLE TOUCHING" (FIRST CAUSE OF ACTION)

Count 1 of the AC is for "battery, sexual abuse, and forcible touching."  This Count is

dismissible in substantial part, as demonstrated below .

### A.  As Relates to the Alleged Drugging and Sexual Assault, the AC Fails to State a Claim for Battery.

To plead a claim for battery, a plaintiff must show "an intentional wrongful physical

contact with another person without consent," *United Nat'l Ins. Co*., 994 F.2d at 108, and, more

specifically, that (1) the defendant made bodily contact, (2) the contact was harmful or offensive,

(3) the defendant intended the contact, and (4) the plaintiff did not consent to the contact.

*Naughright v. Weiss*, 826 F.Supp.2d 676, 685 (S.D.N.Y. 2011); *Higgins v. Hamilton*, 18 A.D.3d

436, 436 (2d Dep't 2005). The intent required for battery is "intent to cause a bodily contact that a reasonable person would find offensive." *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 n.2 (2003). Plaintiff fails to state a cause of action for battery as relates to the alleged drugging or the alleged sexual assault. We discuss those in turn.

     *1. The AC fails to state a claim for battery as to the alleged drugging.*

     Plaintiff alleges that, "[u]pon information and belief, Defendant discretely and surreptitiously incapacitated Plaintiff by either personally spiking, or directing Mahmood to spike, Plaintiff's drink with some drug or other incapacitating substance, such as roofies or GHB." (AC, ¶¶ 44; *accord*, *id.*, ¶ 43) Those allegations are inadequate under *Iqbal* and *Twombly*.

     At the most basic level, as regards the alleged drugging, the AC fails to make any plausible allegations of bodily contact—the core element of a claim for battery. While Plaintiff alleges (in AC, ¶ 105) that, in the course of the alleged drugging, Defendant "forcibly and offensively touched Plaintiff without Plaintiff's consent," those allegations merely recite elements of a battery cause of action and are unsupported by any factual allegations that, in allegedly "spiking, "or "directing" Mahmood to "spike," Plaintiff's drink, Defendant made **any**—let alone intentional, harmful, offensive or nonconsensual—bodily contact with Plaintiff. As relates to the alleged drugging, this defect is fatal. *See*, *e.g.*, *Moore v. City of New York*, 2024 WL 3361193, *9 (S.D.N.Y. July 10, 2024) (dismissing claims for battery against certain defendants "because the Complaint fails to allege they had any physical contact with Plaintiff"); *Jenkins v. County of Washington*, 126 F.Supp.3d 255, 280 (N.D.N.Y. 2015) (dismissing claim for battery where plaintiff "does not allege facts plausibly suggesting that the State Defendants made offensive bodily contact with Plaintiff"); *Naughright*, 826 F.Supp.2d at 685-86 (dismissing

claim of battery against the Karan Defendants where "Naughright does not claim that the Karan Defendants ever made contact with her person"); *Sarlat v. State*, 119 Misc.2d 369, 371 (Ct. Claims 1983) ("the pleading is further deficient in that it fails to allege any wrongful bodily contact, another of the material aspects of a cause of action in battery").

Moreover, independent of the above, the allegations of drugging on their face are inherently and palpably implausible. The AC alleges that Defendant first had Plaintiff's drink "spiked," and then initiated a conversation with him that was "timed" to coincide with Alexander's stepping outside the bar, so that Plaintiff would be incapacitated during the window between Alexander's "stepping out" and his return 15 minutes later. (AC, ¶¶ 39-41, 43, 53-54.) According to the AC, that timing was critical: if Alexander had not stepped outside, or if he had returned before Plaintiff left the bar, Alexander would have seen that Plaintiff had (allegedly) been drugged and would have intervened to help him. However, there is no allegation that Defendant had any advance knowledge that Alexander would be leaving the bar, let alone when he would return.

Further, according to one of the sources relied on in ftn.2 of the AC, while in general an individual who has ingested any of the drugs that Plaintiff alleges Defendant used on him (*id*., ¶ 9) may struggle to talk or move and "may pass out" within 30 minutes, the effects of such drugs on any given individual are "difficult to predict" and depend upon factors such as the dose, the weight and metabolism of the individual and whether alcohol was consumed.[6]

Thus, the allegations that Defendant conceived and carried out a plan to cause Plaintiff to black out precisely during the 15-minute window when Alexander was away from the bar and

---

[6] Drug-Facilitated Sexual Assault, U.S. Dep't of Justice, available at https://www.dea.gov/sites/default/files/2022-01/Drug%20Facilitated%20Sexual%20Assault.pdf. *See also* nn.3, 4 above.

prior to his return, as would be necessary for the alleged plan to work, without any factual allegations as to how Defendant was able to do so, fail to cross "the line from conceivable to plausible," *Iqbal*, 556 U.S. at 683, 127 S.Ct. at 1951; *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1955, and are "[im]plausible on [their] face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1955.

While the foregoing is dispositive, the allegations of "drugging" further are inadequate under *Iqbal* and *Twombly* because they are made upon information and belief, but without any factual allegations showing that a reasonable basis for the asserted belief exists.  *See* cases cased at pp. 7-8 above.  Plaintiff does not allege that he saw Defendant place anything in his drink or was aware or informed of Defendant having done so (*see* AC, ¶¶ 33-38, 48-49, 50-51).  Nor does he allege that there is any forensic or medical evidence supporting his asserted belief that his drink had been drugged.

Instead, Plaintiff alleges that his information and belief as to the alleged drugging are founded on the allegations:  (a) "that he blacked out, that he never before blacked out in such an incapacitating manner where he did not remember anything, that he did not drink anywhere close to enough to black out, that he had no intention to go home with Defendant or engage in any sexual or romantic or other activity with Defendant, that he never said goodbye to his close friend who was his ride at the end of the night, and that he woke up naked in a strange place being forcibly kissed by Defendant who was also naked—all of which are the tell-tale signs of a sexual assault founded on a date rape drug" (AC, ¶ 43 n.4); and (b) "that the drink at the Bar was the only thing Plaintiff ingested during his time in the presence of Defendant, that no one else had access to the drink, that nothing else could have incapacitated Plaintiff in such a way, and that Plaintiff woke up naked in Defendant's apartment, being forcibly kissed by a naked

Defendant" (*id*., ¶ 44 n.5).  But those allegations do not plausibly support an inference that

Plaintiff's drink had been drugged, let alone by or at the direction of Defendant:

First, while Plaintiff asserts that a number of his "supporting" allegations are "the tell-tale

signs of a sexual assault founded on a date rape drug" (AC, ¶ 43 n.4), he cites no authority for

that assertion;

Second, the essential premise of Plaintiff's purported belief is that, because he was

(allegedly) sexually assaulted while he was blacked out, the black-out must have been caused by

a date rape drug placed in his drink.  *See also* AC ¶ 96 (alleging that Defendant's alleged conduct

was "designed specifically and deliberately to incapacitate" him so that Defendant could sexually

assault him).  However, that premise is untenable because, as demonstrated at pp. 15-17 below,

the allegations of sexual assault are themselves inadequate under *Iqbal* and *Twombly*.  In other

words, Plaintiff's contention is that Defendant drugged him in order to sexually assault him;

however, because there is no plausible basis to believe that Plaintiff was sexually assaulted by

Defendant, there likewise can be no plausible basis to believe that he was drugged by

Defendant—as the AC offers no motive for the alleged drugging other than to carry out the

alleged sexual assault.

Third, even assuming, *arguendo*, that the allegations of sexual assault were adequately

pled (which they are not), the allegations of drugging would still be inadequate under *Iqbal* and

*Twombly* because it is equally if not more plausible that Plaintiff's blackout was caused by

factors unrelated to any misconduct by Defendant.  For example, notwithstanding Plaintiff's self-

serving protestation to the contrary, Plaintiff's drink (either alone or ████████████████████

████████████, *see* p. 3 above) could have caused an adverse reaction, or his alleged

incapacitation could have been caused by his drinking without having consumed sufficient food.[7]

 Even if Plaintiff's drink had been drugged—which Defendant does not concede—there

are no factual allegations supporting an inference that the alleged drugging was done by

Defendant or by Mahmood acting at Defendant's direction, as opposed to some third party who

was also at the bar.  While Plaintiff conclusorily asserts that "no one else had access to [his]

drink," he does not allege that he was visually monitoring his drink at all times (*see* pp. 4-5

above).  Nor could he have been:  if Plaintiff had visually monitored his drink at all times, and if

his drink really had been spiked by Defendant or Mahmood as he alleges, then Plaintiff

obviously would have seen one of them doing that, which he admits he did not (AC, ¶ 51).

 And, as to the allegation that if, as Plaintiff speculates, Mahmood had "spiked" his drink,

Mahmood had done so at Defendant's direction, that likewise lacks any factual basis.  To assert,

as Plaintiff purports to do here, that Defendant and Mahmood conspired to drug Plaintiff's drink,

Plaintiff would have to plausibly allege that, among other things, Mahmood entered into a

corrupt agreement with Defendant, committed an overt act in furtherance of that agreement and

intentionally participated with Defendant in the furtherance of a plan or purpose.  *Bigio v. Coca-

Cola Co*., 675 F.3d 163, 176 (2d Cir. 2010) (citing *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d

472, 474 (1st Dep't 2010)).  No factual allegations supporting any of any such agreement, act or

participation have been made.  Indeed, the only "factual" allegation Plaintiff makes as to the

interactions between Defendant and Mahmood is that, at one point during the night, they spoke

---

[7] Plaintiff's bare allegation that his alleged capacitation could have been caused by "nothing
other" than drugs in his drink (AC, n.5) is wholly conclusory and not entitled to a presumption of
truth.

to each other in Italian (AC, ¶ 24), a language that Plaintiff admits neither he nor Alexander understands—which obviously does not in any way constitute proof of a "conspiracy."

<u>Fourth</u>, the allegation that Plaintiff left the bar without saying good-bye to his friend Alexander is equally compatible with Plaintiff having left the bar with Defendant promptly upon feeling ill (*see* subparagraph "Third" above), without having been "drugged" by Defendant; and

<u>Fifth</u>, the allegation that Plaintiff woke up naked with Defendant kissing him (which Defendant completely denies) says nothing about the alleged "drugging" and is equally compatible with Plaintiff having woken up from sleep that was **not** induced by drugs administered by or at the direction of Defendant (*see* subparagraph "Third" above).

At various places in the AC, Plaintiff refers to the alleged drugging without the qualifier "upon information and belief."  (*E.g.*, AC, ¶¶ 8-9, 105.)  However, those allegations, too, fail to allege the requisite bodily contact (*see* p. 8 above).  Beyond that, the allegations are themselves conclusory, and so do not plausibly support an inference that Plaintiff was in fact drugged by Defendant.  They further cannot be accepted as true given Plaintiff's admissions elsewhere in the AC (¶¶ 45-51) ███████████████████████████████████████████████ ███████████████████████████████████████, that he has no knowledge as to whether the alleged drugging actually occurred.  *See In re Livent, Inc. Noteholders Secs. Litig.*, 151 F.Supp.2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that … are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely"); *Mendoza v. Cornell Univ.*, 2021 WL 918622, at *3 (S.D.N.Y. Mar. 10, 2021) (holding that allegations failed to meet plausibility standard where they "contradict other allegations [made] in the Amended Complaint"); *Poindexter*, 2012 WL1027639, *2; *TufAmerica*, 968 F.Supp.2d at 592.

14

2. *The AC fails to state a claim for battery as to the alleged sexual assault.*

Plaintiff asserts that Defendant "intentionally made bodily contact with Plaintiff by engaging in nonconsensual sexual acts with Plaintiff" during Plaintiff's alleged blackout. (AC, ¶ 104.) Those allegations of sexual assault, too, are inadequate to state a claim for battery under *Iqbal* and *Twombly*.

A sexual assault may be inferred if facts are alleged showing contact of a sexual nature without the plaintiff's consent. But here, no such facts are alleged–only the conclusory label that some unspecified sexual assault took place, leaving Defendant to guess at what exactly he is accused of having done. *See Greystoke v. Vice*, 2017 WL 3017399, at *2 (W.D. Wa. June 6, 2017) (rejecting claim for sexual assault when based solely upon conclusory statement); *Grande v. Hennepin Cnty. Sheriffs Dept.*, 2025 WL 1195584, at *3 (D. Minn. Feb. 13, 2025) (same). The reason for Plaintiff's lack of factual support for that label is readily apparent: he alleges that he was blacked out during the relevant time period (AC, ¶¶ 43 n.4, 53, 64-65.) That latter allegation comports with ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Ullman Dec., Ex. B, at COOPER 0004, COOPER 0016; Ullman Dec., Ex. C, at COOPER 0167.) Plaintiff thus has no knowledge that Defendant engaged in any sexual act with him, and no factual basis to believe that any sexual assault occurred, while he was blacked out, but is merely speculating.

Consistent with this, Plaintiff alleges no medical or forensic evidence that a sexual assault took place. ████████████████████████████████████████████████ ████████████████████████████████████. (*See* p. 6 above.) The allegation of sexual assault further is implausible given ██████████████████████

███████████████████████████████████████████████████

█████████████████████████████ (Ullman Dec., Ex. C, at COOPER 0167)

Plaintiff also alleges that he woke up in Defendant's home with Defendant naked next to and kissing him (AC, ¶ 65).  But, even assuming, as we do for present purposes only, the truth of that allegation, it does not plausibly support an inference that, during the course of the night, Defendant committed a sexual assault against Plaintiff.  While the possibility that a sexual assault took place is hypothetically conceivable, it is equally, if not more, plausible that no sexual assault took place, and that Defendant had simply fallen asleep next to Plaintiff after they had been out late drinking and Plaintiff had passed out, potentially due to the alcohol he admits he drank that night.

Plaintiff additionally alleges conduct by Defendant that he says he finds "suspicious"— that Plaintiff's clothes, including his socks, had been "folded neatly in the apartment" (AC, ¶ 73) and that Defendant was "evasive" in subsequent contacts (*id*., ¶¶ 84-85).  However, to present a plausible claim, the "pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1955.  *See also Jaffe v. Capital One Bank*, 2010 WL 691639, *4 (S.D.N.Y. Mar. 1, 2010) (dismissing claims against Chase that "are not based on any 'direct evidence or testimony.'  Jaffe's hunch that valid causes of action against Chase could be brought does not amount to 'a claim to relief that is plausible on its face.' … Indeed, Jaffe's statements concerning Chase's possible wrongdoing constitute precisely the sort of conclusory statements *Iqbal* makes clear will not suffice to sustain a pleading") (citations to *Iqbal* omitted).

And, the alleged conduct that Plaintiff terms "suspicious" is equally compatible with non-culpable conduct by Defendant.  If anything, the allegation that Defendant removed and neatly

folded Plaintiff's clothes suggests that Defendant solicitously removed them so that Plaintiff, who had passed out, would not soil them while asleep in Defendant's bed.[8]  And, Defendant's later "evasion" is equally consistent with, among other things, Defendant simply wishing to have no further involvement with Plaintiff or his friends, particularly given Plaintiff's alleged negative reaction to Defendant's alleged kiss.

Lastly, as noted above (p. 12), Plaintiff alleges that Defendant "drugged" him in order to sexually assault him and could not have sexually assaulted him absent the alleged "drugging." However, as demonstrated at pp. 9-14 above, the AC fails plausibly to allege that Plaintiff was drugged by Defendant—which further confirms that the allegations of sexual assault are not plausible either.

**B.  <u>The AC Fails to State a Claim for "Sexual Assault" or "Forcible Touching".</u>**

The AC also fails to state a claim for "sexual assault" or "forcible touching."  There are three grounds for this.  The first two apply to all of the "drugging," sexual assault and kissing allegations.  The third applies to the "drugging" and sexual assault allegations only.

<u>First</u>, while conduct constituting sexual abuse or forcible touching can, depending on the specifics, serve as a predicate for claims of recognized torts (*e.g.*, battery or assault), "sexual abuse" and "forcible touching," as such, are not to our knowledge independent, stand-alone torts.

"Sexual abuse" and "forcible touching" are, on the other hand, recognized criminal violations under the N.Y. Penal Law (*see* Penal Law, §§  130.52, 130.55, 130.60, 130.65).

---

[8] It is unclear whether Plaintiff is alleging the removal of his clothes as a separate basis for the claim of battery, independent of the alleged sexual assault or kissing (*see* AC, ¶ 105(b).  To the extent he is, the claim is dismissible because, as described above, the allegations are equally or more consistent with conduct that a reasonable person would not find harmful or offensive (*i.e.*, that the clothes were solicitously removed and carefully folded so that they would be kept clean while Plaintiff slept), such that a claim for battery does not lie (*see* p. 8 above).

However, unless specifically provided for by the State legislature, "private citizens do not have a private cause of action for criminal violations." *Peterec v. Hilliard*, 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013); *accord*, *Patterson v. Patterson*, 2019 WL 1284346, *7-*8 (S.D.N.Y. Mar. 20, 2019) (collecting cases); *Ming v. Brouillete*, 2023 WL 5779558, *3 (N.D.N.Y. Apr. 7, 2023), report and recommendation adopted, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023).

No private cause of action for "sexual abuse" or "forcible touching" is available here. Pursuant to CPLR 213-c, the state legislature has provided for a civil cause of action based on certain specified sections of the N.Y. Penal Law. *Patterson*, 2019 WL 1284346, at 7; *Ming*, 2023 WL 5779558, at 3 *Parker v. Rubin*, 2019 WL 646405, *3 (Sup. N.Y. Cnty Feb. 13, 2019). However, those sections do not include any of Penal Law §§ 130.52, 130.55, 130.60 and 130.65. Thus, Plaintiff has no cause of action for the claims of "sexual abuse" and "forcible touching," and all of those claims should be dismissed. *Patterson*, 2019 WL 1284346, *7-*8 (dismissing civil claims predicated on violations of, *inter alia*, N.Y. Penal Law § 130.55 and 130.60); *Ming*, 2023 WL 5779558, *3 (dismissing civil claims predicated on violations of, *inter alia*, N.Y. Penal Law § 130.52).

<u>Second</u>, "[a] court may dismiss a claim as duplicative if relying on the same alleged acts, the claim simply seeks the same damages or other relief already claimed in a companion cause of action." *Williams v. New York State*, 2025 WL 2452219, *3 (S.D.N.Y. Aug. 26, 2025); *accord*, *Popal v. Slovis*, 2015 WL 10687614, at *6 (S.D.N.Y. Apr. 28, 2015) (citing *Hall v. EarthLink Network, Inc*., 396 F.3d 500, 508 (2d Cir. 2005)). Thus, even assuming, *arguendo*, that civil tort claims for "sexual abuse" and "forcible touching" were cognizable, those claims as pled here should be dismissed as duplicative because they rely on the exact same alleged facts, and seek the same damages, as the battery claim.

Third, even assuming, again, that claims for "sexual abuse" and "forcible touching" could be brought, those claims would necessarily fail as regards the alleged "drugging" and sexual assault. That is so because, for the reasons discussed above, Plaintiff has not plausibly pled either that (a) at a general level, Defendant (directly or indirectly) drugged Plaintiff or "sexually assaulted" him or (b) Defendant committed any specific acts that fall within the scope of Penal Law §§ 130.52, 130.55, 130.60 or 130.65.[9]

## II.    AS TO THE ALLEGATIONS OF SEXUAL ASSAULT, THE AC FAILS TO STATE A CLAIM FOR ASSAULT (SECOND CAUSE OF ACTION)

Plaintiff alleges that, through the so-called "Sexual Attack," defined in the AC to consist of the alleged sexual assault (*i.e.*, the alleged sexual assault while Plaintiff was blacked out) and the alleged kissing (AC, ¶¶ 8, 104), Defendant committed the tort of assault.[10] As to the alleged sexual assault, no claim for assault has been stated.

To plead a claim for assault, a plaintiff must show "an intentional placing of another person in fear of imminent or offensive contact." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993); *Bouveng v. NYG Capital LLC*, 2015 WL 3503947, at *9 (S.D.N.Y. June 2, 2015). A defendant must have intended "either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact." *Bouveng*, 2015 WL 3503947, at

---

[9] To the extent the AC seeks to assert a claim based on the alleged removal of Plaintiff's clothes, for the same reasons, that would not plausibly state a claim under CPLR 213-c either. Further, the alleged removal of clothing would not come within the scope of any of Penal Law §§ 130.52, 130.55, 130.60 and 130.65, as there is (and can be) no allegation that the alleged removal constituted sexual contact (as defined in N.Y. Penal Law 130.00) or that, in allegedly removing Plaintiff's clothes, Defendant forcibly touched his sexual or other intimate parts for the purpose of degrading or abusing him. *See also* n.8 above.

[10] As defined by the AC, the "Sexual Attack" does not include the alleged drugging or the alleged removal of clothes.

*9.  Although a plaintiff "need not prove actual contact," he must allege "some physical menace" against his body.  *Id.*

For his claim of assault, Plaintiff alleges that, during the alleged sexual assault, Defendant "intentionally created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person."  (AC, ¶¶ 104 (incorporated by reference), 110).  That allegation is fundamentally defective for three reasons.

First, as demonstrated at pp. 15-17 above, Plaintiff has failed plausibly to plead that the alleged sexual assault happened.  Thus, the necessary predicate for the related claim in Count 2—that Plaintiff was put in fear of immediate harmful contact by reason of the alleged sexual assault—is wholly lacking.  Said differently, because Plaintiff has failed plausibly to plead that he was subject to the alleged sexual assault, his claim that the same (inadequately) alleged sexual assault put him in fear fails with it.

Second, the allegations that, due to the alleged sexual assault, Plaintiff had a reasonable apprehension of imminent harm or offensive contact are wholly conclusory and nothing more than the bare recital of elements of an assault cause of action, which is inadequate under *Iqbal* and *Twombly.*

Third, related to the above, the allegations of the AC themselves negate any argument that, due to the alleged sexual assault, Plaintiff suffered the requisite fear of imminent or offensive contact.  As previously noted, the AC alleges that, during the period in which the sexual assault is said to have occurred, Plaintiff was "blacked out in such an incapacitating manner where he did not remember anything" (AC, ¶¶ 43 n.4); similarly, Plaintiff stated ███ ██████████████████████████ in the Verified Complaint, that he has no knowledge, recollection, awareness or comprehension of anything that happened from the time he allegedly

blacked out until the time he allegedly woke up.[11]  Because Plaintiff was, by his own admissions, unaware of the alleged sexual assault, and thus necessarily unable to have been placed in fear by it, as relates to the alleged sexual assault, no claim for assault has been, or can be, stated. *Naughright*, 826 F.Supp.2d at 685 ("[i]f the Plaintiff was not aware of the potential for danger, or apprehensive that imminent offensive contact could occur, there can be no claim for assault"); *see also Livent*, 151 F.Supp.2d at 405–06; *Mendoza*, 2021 WL 918622, at *3; *Poindexter*, 2012 WL1027639, *2; *TufAmerica*, 968 F.Supp.2d at 592.

### III.    THE AC FAILS TO STATE A CLAIM FOR FALSE IMPRISONMENT (THIRD CAUSE OF ACTION)

To plead a claim for false imprisonment, a plaintiff must show that:  (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Kravtsov v. Town of Greenburgh*, 2012 WL 2719663, at *16 (S.D.N.Y. July 9, 2012); *Rockland Vending Corp. v. Creen*, 2009 WL 2407658, at *3 (S.D.N.Y. Aug. 4, 2009); *Cellamare v. Millbank, Tweed, Hadley & McCloy LLP*, 2003 WL 22937683, at *7 (E.D.N.Y. Dec. 2, 2003).  Plaintiff fails to plausibly allege the first three elements of his false imprisonment claim.

---

[11] *E.g.*, Ullman Dec., Ex. B, at COOPER 0004, 0015, 0016; Ullman Dec., Ex. C, at COOPER 0126, 0130, 0166, 0167, 0170; Verified Complaint (ECF # 10-1), ¶ 15 (stating that, after drinking the allegedly drugged drink, Plaintiff "became … unaware of his actions and surroundings, and unable to comprehend what was going on for the duration of the drug's effect on Plaintiff"). While the Verified Complaint has been superseded by the AC, the factual admissions made in it "remain relevant as party admissions" and may be considered on a motion to dismiss.  *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F.Supp.2d 666, 728 (S.D.N.Y. 2013), vacated and remanded on other grounds, *Gelboim v. Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016); *Austin v. Ford Models, Inc*., 149 F.3d 148, 155 (2d Cir. 1998) ("'The amendment of a pleading does not make it any the less an admission of the party.' … Therefore, Austin cannot benefit from amending her complaint to omit these admissions" (citations omitted)), abrogated on other grounds, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509–10, 122 S.Ct. 992, 996-997 (2002).

First, there are no well-pled allegations that Defendant "confined" Plaintiff or did so intentionally.

While Plaintiff asserts that, (a) "Defendant intended to confine – and did indeed confine – Plaintiff in Defendant's apartment" and (b) "[u]pon waking up from his blackout, Plaintiff was conscious and acutely aware that he had been confined in Defendant's apartment without any ability to leave" (AC, ¶¶ 114, 115), those allegations are wholly conclusory and merely recite a necessary element of a claim of false imprisonment.  Moreover, the latter allegations state only the truism that, while Plaintiff was asleep, he was not ambulatory.  But, there are no factual allegations in the AC supporting an inference that Plaintiff was actually confined, as is necessary for a claim of false imprisonment to lie.

While Plaintiff asserts that, prior to arriving at Defendant's house, he had been drugged so that Defendant could, and did, sexually assault him (AC, ¶ 114), those allegations are inadequate under *Iqbal* and *Twombly* for the reasons discussed at pp. 9-17 above.  And, there are no factual allegations that, once Plaintiff arrived at Defendant's home, Defendant prevented him from leaving it, for example, by holding Plaintiff down, or otherwise physically restrained Plaintiff from leaving.  There likewise are no factual allegations that Defendant prevented Plaintiff from leaving the room in which he was sleeping, for example, by locking Plaintiff in it with no means of escape.  Nor does the AC allege that, upon waking, Plaintiff was restrained from leaving if and when he wished.

 Thus, the element of confinement has not been plausibly pled.  *See Cellamare*, 2003 WL 22937683, at *8 (dismissing false imprisonment claim where "[Defendant] did not tell [Plaintiff] that she was not free to leave and there is no allegation that [Defendant] forced her to stay"); *Bower v. Weisman*, 639 F.Supp. 532, 541 (S.D.N.Y. 1986) (allegation that "guards were placed

in the lobby to restrict [plaintiff's] entry and exit" insufficient to support false imprisonment claim "since [plaintiff] has not alleged actual physical confinement"); *see also Rockland*, 2009 WL 2407658, at *3, *24-25 (finding no false imprisonment where Plaintiff "acknowledges that he never asked or attempted to leave" and did not allege "that the doors were locked specifically to confine him" or that "Defendants told him he could not leave"); *Kravtsov*, 2012 WL 2719663, at *17 (finding no false imprisonment where "by Plaintiff's account he was not confined, either physically or by threatening conduct").

Second, independent of the foregoing, Plaintiff fails plausibly to allege that he was conscious of the asserted confinement, a necessary element of a false imprisonment claim. *See Parvi v. City of Kingston*, 41 N.Y.2d 553, 556-57 (1977) ("while respected authorities have divided on whether awareness of confinement by one who has been falsely imprisoned should be a *sine qua non* for making out a case", in this state, "false imprisonment, as a dignitary tort, is not suffered unless its victim knows of the dignitary invasion"); *see also Livent*, 151 F.Supp.2d at 405–06; *Mendoza*, 2021 WL 918622, at *3.

In ¶¶ 53 and 65 of the AC, Plaintiff alleges that he blacked out while at 2 Sisters and woke up several hours later. He does not allege that he was in fact conscious at any time within the black-out period, or allege any facts supporting an inference that he was conscious at any such time.

While Plaintiff alleges that, "[u]pon information and belief," he "was conscious at various points throughout his confinement," the sole support offered for that allegation is his statement: "that Plaintiff does not remember the events of the blackout after the blackout … does not mean that Plaintiff was not conscious while he was confined to Defendant's apartment" (AC, ¶ 116). But that statement does not recite facts plausibly supporting a belief that Plaintiff

**was** conscious at any time during his alleged black-out, but constitutes only speculation and conjecture that he might have been conscious, while recognizing that it is equally possible, if not more likely, that he was not. *See* pp. 5, 20-21 above. Under *Iqbal* and *Twombly*, that is not enough. Any speculation of sporadic consciousness further is negated by Plaintiff's sworn statement in the Verified Complaint that, as a result of the alleged drugging, he was "unaware of his actions and surroundings, and unable to comprehend what was going on for the duration of the drug's effect on Plaintiff." (ECF # 10-1, ¶ 15; *see* n.11 above.)

Third, given that there are no plausible allegations of confinement, Plaintiff has also failed plausibly to plead that he was subject to a confinement without his consent.

## IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 10-1101 ET SEQ. (FOURTH CAUSE OF ACTION)

To plead a claim under the GMVA, a plaintiff must show: (1) that the alleged act constitutes a misdemeanor or felony against the person and presenting a serious risk of physical injury to another; (2) was perpetrated because of plaintiff's gender; (3) in part because of animus against plaintiff's gender; and (4) resulted in injury. GMVA § 10-1104; *Doe v. Gooding*, 2021 WL 5991819, at *5 (S.D.N.Y. July 29, 2021); *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 930710, *10 (S.D.N.Y. Mar. 11, 2021); *Breest v. Haggis*, 180 A.D.3d 83, 88-89 (1st Dep't 2019). Generally, the animus element requires the plaintiff to "present extrinsic evidence of the defendant's expressed hatred toward [a gender] as a group or allege specific actions and statements by the perpetrator during the commission of the alleged crime of violence." *Rossbach*, 2021 WL 930710, *10. Here, no claim under the GMVA has been stated.

First, while Plaintiff asserts that "[t]he acts alleged herein would constitute, *inter alia*, sexual misconduct, rape, forcible touching, sexual abuse, facilitating a sex offense with a controlled substance, and possibly other crimes under N.Y. Penal Law Section 130" (AC, ¶ 122),

those assertions are wholly conclusory and inadequate to make out the first element of a GMVA violation.

As to the alleged drugging and sexual abuse, Article 130 of the N.Y. Penal Law classifies over 15 types of sex offenses violations, with each covering very specific acts of sexual misconduct. The AC fails utterly to allege facts supporting a contention that Defendant committed acts falling within the purview of any of them, or that he engaged in conduct presenting a serious risk of physical injury to Plaintiff. Rather, as discussed above (pp. 9-17), the AC contains only conclusory and entirely speculative allegations that Plaintiff was, in some unidentified ways, first "drugged" and then "sexually assaulted" by Defendant, and it is equally, if not more, possible that no drugging or sexual assault occurred.

As to the alleged kissing, Plaintiff alleges only that, upon wakening and finding Defendant kissing him, he immediately expressed his displeasure and extricated himself from Defendant. Taking those allegations as true, Plaintiff fails to allege any facts statements supporting an inference that, as a result of the alleged kissing, he was placed at serious risk of physical harm. *Rossbach*, 2021 WL 930710, *11 (granting summary judgment on GMVA claim where plaintiff failed to show that defendant's "unwanted touching posed a serious risk of physical injury").

<u>Second</u>, Plaintiff also fails plausibly to allege that Defendant acted with animus against Plaintiff's gender. Courts have differed on how to apply the gender animus standard in cases involving claims of rape and sexual assault. *See Baldwin v. TMPL Lexington LLC,* 2024 WL 3862150, at *13 (S.D.N.Y. Aug. 19, 2024) ("Some [courts] interpreted gender animus to require that plaintiffs show extrinsic evidence of the defendant's expressed hatred toward women as a group; others applied the totality of the circumstances analysis borrowed from Title VII"); *see*

*also Breest*, 180 A.D.3d at 94 ("Rape and sexual assault are, by definition, actions taken against the victim without the victim's consent … Malice or ill will based on gender is apparent from the alleged commission of the act itself"[12]).  *See also Rossbach*, 2021 WL 930710, at *11 (noting the absence of any "authority indicating that the requisite animus element may be inferred in [GMVA] cases not premised on rape").  Here, Plaintiff has not plausibly pled that a rape or sexual assault took place (*see* pp. 15-17 above).[13]  Accordingly, malice or ill will cannot even arguably be said to be apparent from the act alleged, and Plaintiff must separately, and plausibly, plead gender animus.

Plaintiff has failed to do so.  While Plaintiff conclusorily states that Defendant's actions were committed "solely because of (or on the basis of) his gender" (AC, ¶ 123), that simply recites an element of a claim under the GMVA, which fails to meet the dictates of *Iqbal* and *Twombly*.  The AC further is bereft of any factual allegations supporting an inference that Defendant was biased against men.  There are, for example, no allegations that Defendant uttered any "gendered or sexually loaded insults" that can indicate "animus on the basis of sex."  *HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552, *17 (S.D.N.Y. Sept. 27, 2012).  On the contrary, the AC alleges that Defendant was celebrating Pride weekend (AC ¶¶ 7, 72), which suggests the opposite of animus against the Plaintiff's gender.  Accordingly, gender animus has not adequately been pled, which further requires that the GMVA claim be dismissed.  *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F.Supp.3d 429, 455 (S.D.N.Y. 2018) (granting

---

[12] Unlike here, the allegations of sexual assault in *Breest* were concrete and specific.  *See* 180 A.D.3d at 86 ("According to the amended complaint defendant … forced plaintiff to give him oral sex; then he digitally penetrated her and commented that she was 'nice and tight'; then he raped her").

[13] We are not aware of any case in which a New York court has found inherent animus towards a Plaintiff's gender based on an alleged kiss, as opposed to rape or sexual assault.

motion to dismiss where plaintiff failed to plead specific allegations that defendant "harbored or expressed any animosity toward [plaintiff's gender]"); *Rossbach*, 2021 WL 930710, at *11 (same, on summary judgment).

## V.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FIFTH CAUSE OF ACTION)

To plead a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show:  (1) extreme and outrageous conduct by the defendant; (2) with an intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress.  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993).  "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting Howell, 81 N.Y.2d at 122).  The New York Court of Appeals has observed that, "of the intentional infliction of emotional distress claims considered by this Court, **every one** has failed because the alleged conduct was not sufficiently outrageous.'" *LaNasa v. Steine*, 2025 WL 893456, *4 (2d Cir. March 24, 2025) (quoting *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 57 (2016) (emphasis in original).

To satisfy the first element, the defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Howell*, 81 N.Y.2d at 122; *Cuellar v. Love*, 2014 WL 1486458, at *14 (S.D.N.Y. Apr. 11, 2014).

To satisfy the second element, the defendant's actions must have been taken "(a) with the desire to cause such distress to plaintiff, (b) under circumstances known to defendant which made it substantially certain that plaintiff would be distressed, or (c) recklessly and with utter

disregard of the consequences." *Cuellar v. Love,* 2014 WL 1486458, at *14 (quoting *Brewton v. City of New York*, 550 F.Supp.2d 355, 369 (E.D.N.Y. 2008)).

To satisfy the fourth element, a plaintiff must make more than conclusory assertions that he or she suffered severe emotional distress. *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021) ("Specht's amended complaint levels only conclusory allegations that he suffered emotional distress, allegations that are insufficient to state a claim"); *Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at 10 (S.D.N.Y. May 18, 2018) (dismissing IIED claim where "Plaintiff has not alleged any facts to support her conclusory assertion that she suffered 'severe emotional distress, requiring medical treatment and medication'"); *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (dismissing IIED claim where plaintiff did not make "any non-conclusory allegation that [the plaintiff] suffered severe emotional distress"); *Lyman v. City of N.Y.*, 1997 WL 473976, at *3 (S.D.N.Y. Aug. 20, 1997) (same; plaintiff alleged "in a conclusory manner that as a result of [defendant's] conduct she has suffered 'severe emotional distress ... and substantial emotional anguish'"); *Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562 (2d Dep't 2012) (dismissing claim for IIED distress where "the cause of action ... states little more than the conclusion that 'plaintiff suffered extreme and grievous mental distress as a result of the extreme and outrageous behavior of the defendants'").

Also, claims for IIED are barred "where the conduct complained of falls well within the ambit of other traditional tort liability." *Bouveng*, 2015 WL 3503947, at *14; *Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 530 n.10 (S.D.N.Y. 2013); *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 2009 WL 817852, *9 (E.D.N.Y. Mar. 27, 2009) (noting that "[t]here is a consensus among the Appellate Departments that an intentional infliction of emotional distress claim may be dismissed if it falls within the ambit of another claim"); *Roper v. Hynes*, 2006 WL 2773032, *13

(S.D.N.Y. Sept. 27, 2006) (dismissing claim for IIED which fell within scope of other torts); *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) (claim for intentional infliction of emotional distress where "the conduct complained of is squarely addressed by plaintiff's claims for malicious prosecution and assault and battery"); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005) ("the cause of action alleging intentional infliction of emotional distress should have been dismissed as duplicative of the cause of action alleging malicious prosecution and assault and battery"); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (1st Dep't 1998) ("intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort. . . . [Such a claim is p]recluded where the offending conduct is embraced by a traditional tort remedy"); *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 784-785 (3d Dep't 1994) ("It is well settled that a cause of action for intentional infliction of emotional distress should not be entertained where the conduct complained of falls well within the ambit of other traditional tort liability").[14]

    In Count 5, Plaintiff alleges that "Defendant's misconduct caused Plaintiff to be the victim of one of the most heinous, offensive, degrading, and humiliating crimes imaginable i.e., being sexually assaulted, and will likely leave Plaintiff forever scarred and traumatized."  (AC, ¶ 128)[15]  However, as demonstrated above (pp. 15-17), the AC fails plausibly to allege that any sexual assault occurred; *a fortiorari*, the claim for intentional infliction of emotional distress likewise fails.

---

[14] *See also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) ("[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.' All four Appellate Division courts have answered the question and held that it cannot." (citation omitted)

[15] The AC does not claim intentional infliction of emotional distress based on the alleged kissing or the alleged removal of clothes.

Nor has Plaintiff plausibly pled that he suffered emotional distress.  No medical or other factual support for that is alleged—only unsubstantiated and conclusory assertions that he has suffered unspecified "severe, serious and permanent … psychological, and emotional injuries" (AC, ¶ 100) and will "likely" be "forever scarred and traumatized" (*id*., ¶ 128), which are inadequate as a matter of law.  *See* cases cited at p. 28 above.  Those conclusory allegations of emotion distress further are implausible in light of plaintiff's hospital records, ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████████ (Ullman Dec., Ex. C, at COOPER 0170, 0171████████████████████████████████████ ███████████████████████████████████ (*id*., at COOPER 0128, 0131███████████████████████████████ ████████████████████████████████████████ (*id*., at COOPER 0137).

Finally on this point, the conduct alleged to have caused the asserted emotional distress— the alleged sexual assault—is fully within the ambit of Plaintiff's claims for "battery, sexual abuse and forcible touching" (Count 1) and for assault (Count 2), and is specifically alleged as a basis for both of those claims.  This provides a further and independent reason as to why the IIED claim is barred.  *See Bouveng*, 2015 WL 3503947, *15 (claim for IIED predicated on alleged sexual assault dismissed; "the SAC alleges that Wey 'molested, assaulted, battered, harassed, humiliated, degraded, disparaged, defamed and retaliated against Plaintiff,' and thus intentionally inflicted emotional distress on her. … To the extent that Plaintiff's IIED claim is based on Wey's sexual contact with her, however—whether rape, tortious menacing, or unwanted touching—the traditional tort remedies of assault and battery apply"); *Lan Sang*, 951

F.Supp.2d at 530 n.10; *Rivers*, 2009 WL 817852, *9; *Roper*, 2006 WL 2773032, *13; *Hansel*, 991 F.Supp. at 75; *Leonard*, 20 A.D.3d 510 at 510; *McIntyre*, 256 A.D.2d at 270; *Butler*, 203 A.D.2d at 784-785.

## VI.   THE AC FAILS TO STATE A CLAIM FOR ATTORNEYS' FEES (SIXTH CAUSE OF ACTION)

Under New York law, claims for attorney's fees "are not claims upon which relief may be granted; rather, they are potential forms of relief.  As such, they cannot stand as separate causes of action and will be dismissed." *Jaffe*, 2010 WL 691639, *10; *O'Hara v. Cohen-Sanchez*, 2025 WL 931282, *8 n.14 ("[a]s defendants correctly note in their brief, attorney's fees are a type of damages and not a separate cause of action"); *La Porta v. Alacra*, 142 A.D.2d 851, 853 (1st Dep't 2016) (claim for attorney's fees may not "be maintained as a separate cause of action").  Accordingly, Count 6, styled as a separate cause of action for attorney's fees, should be dismissed.

## VII.   THE AC FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES (SEVENTH CAUSE OF ACTION)

Under New York law, "'[a] punitive damages claim is not a cause of action but is instead a form of relief.'"  *Watkins v. Harlem Center for Nursing and Rehabilitation, LLC*,  2021 WL 4443968, *14 (S.D.N.Y. Sept. 28, 2021) (quoting *Horowitz v. Spark Energy, Inc*., 2020 WL 4917180, *6 (S.D.N.Y. Aug. 21, 2020), dismissing separate cause of action for punitive damages and collecting cases); *Murphy v. Certain*, 217 A.D.3d 456 (1st Dep't 2023) ("[t]he claim for punitive damages was properly dismissed, as punitive damages are a remedy, and not an independent cause of action"); *see also Rocanova v. Equitable Life Assurance Soc. of U.S.*, 83 N.Y.2d 603, 616 (1994) ("[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action").  Accordingly, Count 7 should be dismissed.

31

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be granted, with

prejudice.

Dated: New York, New York
      September 5, 2025

                            DENTONS US LLP

                        By:  /s/ *Anthony B. Ullman*
                            Anthony B. Ullman
                            Louis A. Pellegrino
                            Jonathan Hong
                            1221 Avenue of the Americas
                            New York, New York 10020-1089
                            Tel: (212) 768-6700
                            Fax: (212) 768-6800
                            anthony.ullman@dentons.com
                            louis.pellegrino@dentons.com
                             jonathan.hong@dentons.com
                            *Attorneys for Defendant*