USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/03/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PATRICK COOPER,

Plaintiff,

-against-                                                                        25-cv-4758 (LAK)

RICCARDO TISCI,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

> Philip Michael Hines
> Bryan John Brockington
> Uri Nazryan
> HELD & HINES, LLP
> *Attorneys for Plaintiff*
>
> Anthony B. Ullman
> Louis A. Pellegrino
> DENTONS US LLP
> *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge*.

Plaintiff Patrick Cooper alleges that defendant Riccardo Tisci drugged and sexually assaulted him on June 30, 2024.  Tisci moves to dismiss the amended complaint.

***Facts***

At the motion to dismiss stage, the Court assumes the truth of all well-pleaded factual

allegations in the amended complaint and views them in the light most favorable to the plaintiff.[1] Accordingly, the determination of whether the evidence will bear out the account below must await a later stage of this lawsuit.

*Cooper Meets Tisci*

On Saturday, June 29, 2024, plaintiff Patrick Cooper went to a bar with his close friend, Michael Alexander, to celebrate International LGBT Pride Weekend.[2] Cooper and Alexander agreed that Alexander would drive Cooper home at the end of the night.[3] Some time after midnight, Cooper and Alexander encountered defendant Riccardo Tisci and Tisci's friend, Alessandro Mahmood.[4] Cooper did not know Tisci or Mahmood, but Alexander, who had had a previous relationship with Tisci, introduced Cooper and Tisci.[5] The four men together drove to a bar in Harlem.[6]

Cooper alleges that he had no intention of engaging in sexual activity with Tisci.[7] This was at least in part attributable to the fact that Cooper knew that Tisci "was, or had once been,

---

[1]      *E.g.*, *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

[2]      Am. Compl. (Dkt 19) ¶¶ 7, 12.

[3]      *Id.* ¶ 14.

[4]      *Id.* ¶¶ 15, 16.

[5]      *Id.* ¶¶ 11-12, 15, 17.

[6]      *Id.* ¶ 23.

[7]      *Id.* ¶¶ 20, 25, 47.

interested in engaging in sexual activity with Alexander," which made Tisci "off limits" to Cooper.[8]
Moreover, according to Cooper, the plan for Alexander to drive Cooper home remained unchanged through the night.[9]

*Cooper Blacks Out and Leaves the Bar*

When Cooper, Alexander, Mahmood, and Tisci got to the new bar, Cooper alleges that he neither was drunk nor otherwise intoxicated.[10] He had a high tolerance to alcohol and had not taken any drugs during the night.[11] Cooper had only one drink at this bar, which Alexander paid for and Mahmood brought to Cooper.[12] Cooper consumed that drink while sitting with Alexander, Mahmood, and Tisci, the only people with whom Cooper interacted at the bar.[13]

At some point, Alexander left the bar for about fifteen minutes to get something from his car.[14] Cooper continued drinking and talking with Tisci while Alexander was out of the bar, but Cooper then blacked out.[15] Cooper alleges that he saw no one put drugs into his drink and that his

---

[8] *Id.* ¶¶ 17-19.

[9] *Id.* ¶¶ 22, 42, 43 n.4.

[10] *Id.* ¶ 26.

[11] *Id.* ¶¶ 27, 29.

[12] *Id.* ¶¶ 31-33.

[13] *Id.* ¶¶ 35-37.

[14] *Id.* ¶¶ 41-42.

[15] *Id.* ¶¶ 43, 53.

4

drink did not taste or otherwise seem as though it had been drugged.[16]  Nevertheless, Cooper asserts that he "never before [had] blacked out in such an incapacitating manner where he did not remember anything."[17]

When Alexander returned to the bar, Alexander saw that Cooper, Mahmood, and Tisci had departed, although none of them had told Alexander that they would leave.[18]  None of them responded when Alexander made calls or sent texts in an effort to learn why they had left.[19]

*The Next Morning*

Several hours after Cooper blacked out, he awakened in an unfamiliar apartment with Tisci.[20]  Cooper did not know where he was.[21]  He "was disoriented and confused, with no recollection of how he got . . . where he was."[22]  He found himself completely naked, laying on a bed, with Tisci, also completely naked, on top of and forcibly kissing him.[23]

Cooper "was shocked and horrified, and immediately and frantically extricated

---

[16]  *Id.* ¶¶ 50-51.

[17]  *Id.* ¶ 43 n.4.

[18]  *Id.* ¶¶ 54-59.

[19]  *Id.* ¶¶ 57-59, 61-62.

[20]  *Id.* ¶¶ 64, 68.

[21]  *Id.* ¶ 68.

[22]  *Id.* ¶ 69.

[23]  *Id.* ¶ 65.

himself."[24]  He asked Tisci what was going on to which Tisci answered only that Alexander had "sponsored the night."[25]

Cooper found his clothes, including his socks, folded neatly in a pile in the apartment, which, he contends, was uncharacteristic of him, especially because he "never removed his socks during intimate interactions."[26]  He found his phone elsewhere in the apartment though it had been turned off, which would have been uncharacteristic of him, Cooper claims, because he did not turn off his phone at night.[27]  "Within minutes of waking up, in a near-panic, [Cooper] left the apartment" whereupon he realized that he had been at Tisci's apartment.[28]

*Prior Proceedings*

Cooper filed this action in New York State Supreme Court, County of New York.[29] Tisci removed it to this Court on the basis of diversity of citizenship.[30]  The amended complaint in essence claims that Tisci covertly drugged and then sexually assaulted Cooper.  It contains several common law claims and one statutory cause of action.  Tisci now moves to dismiss the amended

---

[24] *Id.* ¶ 66.

[25] *Id.* ¶ 70.

[26] *Id.* ¶ 73.

[27] *Id.* ¶¶ 74-75.

[28] *Id.* ¶¶ 76-77.

[29] Removal Notice, Ex. B (Dkt 1-2).

[30] Removal Notice (Dkt 1) ¶¶ 5-7.

6

complaint pursuant to Rule 12(b)(6) for failure to state a cause of action.  His position centers on

his contentions that Cooper's claims all are false and that the amended complaint fails to allege

sufficient *facts*, as distinguished from speculation *and* surmise, to justify the continuation of this

case.

### *Discussion*

Given that lynchpin to Tisci's motion, the Court begins with the legal standard that

governs motions such as this and the materials that appropriately are considered in resolving them.

The Court then addresses each of Cooper's causes of action to determine its legal sufficiency.

*Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts

sufficient to "state a claim to relief that is plausible on its face."[31]  The pleaded facts must allow "the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]  In

deciding a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws

reasonable inferences in the plaintiff's favor.[33]

That standard is so well established that it rarely requires more than a bare mention

in deciding motions to dismiss.  But Tisci here perhaps seeks to put his own spin on it.  He contends

that a court must dismiss a complaint "[w]here the well-pled facts support no more than 'the mere

---

[31]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[32]  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[33]  *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180, 195 (2024).

possibility of misconduct,' and are also compatible with lawful conduct."[34]  He urges also that a court should look skeptically on a plaintiff's allegations of fact that expressly are based on "information and belief," as some of Cooper's assertions are, as distinguished from personal knowledge.[35]  Tisci  characterizes such allegations as "talisman[s] of speculation and conjecture."[36]

To be sure, a court may consider alternative inferences that might be drawn from well-pleaded facts.  But it is free to dismiss a complaint *only* when such facts are "not only compatible with, but *indeed [are] more likely explained by*" lawful conduct.[37]  A court must "draw on its judicial experience and common sense" to determine whether the allegations in context clear the plausibility bar or more likely are explained by lawful conduct.[38]

Nor need a court look skeptically on allegations of fact made on the basis of information and belief.  Rule 11(b)(3) requires in relevant part only that one signing a complaint thereby "certifies[, on pain of sanctions,] to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."  Thus, the significance of "information and belief" allegations in the Rule 12(b)(6) context depends upon whether all the

---

[34]  Def.'s Mem. Supp. Mot. Dismiss (Dkt 26) at 7 (quoting *Iqbal*, 556 U.S. at 679).

[35]  Def.'s Mem. Supp. Mot. Dismiss (Dkt 26) at 7-8.

[36]  *Id.* (quoting *Endobotics, LLC v. Fujifilm Healthcare Ams. Corp.*, No. 24-cv-2266, 2025 WL 1549027, at *2 (S.D.N.Y. May 29, 2025)).

[37]  *Iqbal*, 556 U.S. at 680 (emphasis added).

[38]  *Id.* at 679-80.

alleged facts, together, are enough to support the "information and belief" allegations and, more broadly, "nudge[] the[ plaintiff's] claims across the line from conceivable to plausible."[39]  In order to do that, a plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"[40]

One other point affecting the evaluation of the sufficiency of the amended complaint on this motion should be addressed at the outset.  Tisci has submitted in support of his motion copies of police and hospital reports relating to events of the night in question and subsequent hospital visits.  He uses at least the hospital report to support factual arguments as to what did or did not happen between him and Cooper.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court nevertheless may consider it where the

---

[39]

*Twombly,* 550 U.S. at 570.

Indeed, where as here at least some of the facts alleged on "information and belief" appear to be uniquely within the ken of the defendant, the plaintiff may be entitled to more than the usual latitude at the motion to dismiss stage.  A court may extend a presumption of veracity to facts alleged "upon information and belief" "where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  A plaintiff need not plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Id.* at 120-21.

[40]

*Citizens United v. Schneiderman,* 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570).

complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[41]

While the amended complaint refers to the hospital visits in question, it does not refer to the reports or their contents. The Court concludes that those reports and their contents are not "integral" to the amended complaint.

Further, presentation on a motion to dismiss of materials outside the four corners of and not incorporated in the complaint – unless they are excluded by a court for purposes of the motion – requires that the motion be converted into one for summary judgment.[42] Among other things, that (a) restricts the court to consideration only of evidence that would be admissible at trial,[43] and (b) requires that "[a]ll parties . . . be given a reasonable opportunity to present all the material that is pertinent to the motion,"[44] which often involves pretrial discovery.

In all the circumstances, the interests of justice would not be served by converting Tisci's motion into one for summary judgment this early in the development of the case. The Court therefore excludes the police and hospital reports from consideration on this motion, which therefore will be decided on the material contained within the four corners of the amended complaint.

---

[41]

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[42]

Fed. R. Civ. P. 12(d).

[43]

*See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009).

[44]

Fed. R. Civ. P. 12(d).

*The Battery Claim*

Cooper's first cause of action is for battery, sexual abuse, and forcible touching.

His well-pleaded allegations, assuming their truth, would establish the following scenario.

Cooper went to a bar on June 30, 2024, planning to drive home with his friend at the end of the night.[45]  His intention to do so remained unchanged through the night.[46]  He never intended to engage in any sexual activity, let alone go home, with Tisci.[47]

Cooper was sober before he went to the bar, and he had only one drink there.[48]  While consuming that drink, he blacked out in a way that he never had before.[49]  When that occurred, he was in the company of Tisci and Tisci's friend, Mahmood.[50]  Cooper, Tisci, and Mahmood then left the bar without saying anything to Cooper's friend, Alexander, despite Cooper having been introduced to Tisci by Alexander and despite Cooper's plans to drive home at the end of the night with Alexander.[51]

Cooper woke up several hours later, naked, in Tisci's bed, with Tisci, also naked, on

---

[45] Am. Compl. (Dkt 19) ¶ 14.

[46] *Id.* ¶¶ 22, 42, 43 n.4.

[47] *Id.* ¶¶ 19-22, 25, 42, 43 n.4, 47.

[48] *Id.* ¶¶ 26-27, 29, 31-33.

[49] *Id.* ¶¶ 43 & 43 n.4.

[50] *Id.* ¶¶ 41-43, 53.

[51] *Id.* ¶¶ 14-15, 22, 54-59.

11

top of and kissing him.[52]  Cooper's clothes had been taken off him and neatly folded in a way that he would not have done himself.[53]  His phone had been turned off, something else that Cooper normally would not have done.[54]  Tisci did not explain what happened or why Cooper woke up naked in Tisci's bed beyond saying that Alexander had "sponsored the night."[55]

It bears repeated emphasis that the Court is obliged at this stage to accept as true the factual allegations of the amended complaint and to draw in favor of Cooper all inferences that might be drawn from those facts.  Given that standard, the Court is bound to say that Cooper's allegations are sufficient to "nudge[] his claim[] across the line from conceivable to plausible."[56]  Assuming he can prove those facts – which of course remains to be seen – it would be plausible to conclude that Tisci or someone else drugged Cooper's drink, took Cooper to Tisci's apartment, undressed him, and had sexual contact with Cooper while Cooper remained insensible.

To be sure, other inferences from those facts are conceivable.  For example, perhaps as Tisci suggests, Cooper "blacked out" because he drank on an empty stomach, had some adverse reaction to the alcohol, or simply fell into a very deep sleep.  Perhaps Tisci and his friend solicitously took the "blacked out" or sleeping Cooper to Tisci's apartment to "sleep it off," nicely undressed him to make him comfortable, neatly folded his clothes, and turned off his phone to

---

[52]  *Id.* ¶¶ 64-65.

[53]  *Id.* ¶ 73.

[54]  *Id.* ¶¶ 74-75.

[55]  *Id.* ¶¶ 70, 72, 83-84, 87.

[56]  *Twombly*, 550 U.S. at 570.

preserve the battery.  Other possibilities could be imagined.  But, assuming that Cooper in fact woke up naked in Tisci's bed to find Tisci naked, on top of and kissing him – after an evening in which Cooper (1) did not intend to do anything more than have drinks with a friend and new acquaintances, (2) then be driven to his own home by Alexander, and (3) certainly did not intend to become involved with Tisci, whom he considered "off limits" to him – it at least is marginally more likely that Cooper's alleged scenario aligns with reality than others that might be possible.

Battery "is an intentional wrongful physical contact with another person without consent."[57]  The intent required is that "to cause a bodily contact that a reasonable person would find offensive."[58]  The contact need not "be applied directly to the body of the victim," such as in the case of "administering a poison."[59]  It need be only a kind of "'physical force' . . . as opposed to 'intellectual or emotional force.'"[60]  The civil tort of battery "subsume[s] all forms of tortious menacing and unwanted touching."[61]

Assuming as the Court must at this stage that Tisci was on top of and forcibly kissing

---

[57] *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41, 252 A.D.2d 413, 414 (1st Dep't 1998)); *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (same).

[58] *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. and Med. Ctr.*, 425 F.3d 126, 134 (2d Cir. 2005) (quoting *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 n.2, 769 N.Y.S.2d 184, 189 n.2 (2003)).

[59] *See United States v. Castleman*, 572 U.S. 157, 170 (2014) (quoting 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.2(b) (2d ed. 2003)).

[60] *See Castleman*, 572 U.S. at 170 (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)).

[61] *Girden v. Sandals Int'l*, 262 F.3d 195, 204 (2d Cir. 2001) (quoting *United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)).

13

Cooper without his consent, a jury reasonably could find that he committed the tort of battery. Dismissal at this point of the battery claim therefore would be inappropriate.

*The Assault Claim*

Cooper's second cause of action is for assault.

Assault is the "intentional placing of another person in fear of imminent harmful or offensive contact."[62] The intent required is that to "inflict personal injury or to arouse apprehension of harmful or offensive bodily contact."[63]

Cooper's plausible allegations of being drugged, taken back to Tisci's home, stripped naked, and forcibly kissed by Tisci are sufficient to make out a claim of assault for substantially the same reasons that they are sufficient to make out a claim of battery.

Tisci contends that someone who is blacked out cannot be placed in fear of imminent harmful or offensive contact. Even assuming, without deciding, that he is correct, the argument overlooks the allegations that when Cooper woke up, he was "shocked and horrified, and immediately and frantically extricated himself from [Tisci]," who was naked, on top of and forcibly kissing him.[64] Cooper was "alone with Tisci in an unknown apartment," "disoriented and confused," and "in a near-panic."[65] Drawing reasonable inferences in Cooper's favor, it is plausible that Tisci

---

[62] *Girden*, 262 F.3d at 203 (quoting *United Nat'l Ins. Co.*, 994 F.2d at 108).

[63] *Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 930 F. Supp. 124, 133 (S.D.N.Y. 1996).

[64] Am. Compl. (Dkt 19) ¶¶ 65-66.

[65] *Id.* ¶¶ 68-69, 76.

14

intentionally placed Cooper in fear of imminent harmful or offensive contact at least when Cooper

woke up.  Cooper thus has pleaded a legally sufficient assault claim.

*The False Imprisonment Claim*

Cooper's third cause of action is for false imprisonment.

"The elements of the tort of false imprisonment are: '(1) the defendant intended to

confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not

consent to the confinement and (4) the confinement was not otherwise privileged.'"[66] A false

imprisonment claim requires also "a prima facie showing of actual confinement or threatening

conduct."[67]

Cooper alleges that he was confined through incapacitation by Tisci's use of a drug.[68]

He claims that he could not consent to, object to, or fight back against Tisci's advances while he was

drugged.[69]  These plausible allegations lead to the inference that Cooper physically was unable to

leave Tisci's apartment while he was drugged.  Cooper thus has made a prima facie showing of

---

[66]
    *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)) (alterations in original).

[67]
    *Lee v. Bankers Tr. Co.*, No. 96 Civ. 8153, 1998 WL 107119, at *4 (S.D.N.Y. Mar. 11, 1998); *Kravtsov v. Town of Greenburgh*, No. 10-CV-3142, 2012 WL 2719663, at *16 (S.D.N.Y. July 9, 2012); *Elson v. Consol. Edison Co. of N.Y., Inc.*, 226 A.D.2d 288, 289, 641 N.Y.S.2d 294, 295 (1st Dep't 1996); Restatement (Second) of Torts § 35 (A.L.I. 1965); *see Torres v. Madrid*, 592 U.S. 306, 320 (2021).

[68]
    Am. Compl. (Dkt 19) ¶ 114.

[69]
    *Id.*

actual confinement.[70]

Cooper's well-pleaded allegations support too the elements of Tisci's intent, Cooper's lack of consent, and the absence of privilege for substantially the same reasons as they sustain Cooper's battery and assault claims.  Cooper's consciousness of his confinement is a factual issue to be further developed during discovery and likely decided by the finder of fact at trial.[71]

*The Gender-Motivated Violence Prevention Law Claim*

Cooper's fourth cause of action is for an alleged violation of New York City's Victims of Gender-Motivated Violence Protection Law (the "GMVPL").[72]

The GMVPL creates a civil cause of action for "any person claiming to be injured by a party who commits . . . a crime of violence motivated by gender."[73]  A crime of violence is,

---

[70]

See *Doe v. Alsaud*, 224 F. Supp. 3d 286, 295 (S.D.N.Y. 2016) (holding that plaintiff's allegations that defendant drugged her, brought her back to his hotel, and sexually assaulted her were sufficient to make out the elements of false imprisonment); *Doe v. Hyassat*, No. 18 Civ. 6110, 2024 WL 1955354, at *4 (S.D.N.Y. May 3, 2024) (same).

None of the cases Tisci cites in support of his claim that Cooper was not confined are analogous because they do not involve a plaintiff who physically was unable to extricate himself or herself from the alleged confinement.  See *Bower v. Weisman*, 639 F. Supp. 532, 540-41 (S.D.N.Y. 1986) (plaintiff able to come and go from her apartment); *Cellamare v. Millbank, Tweed, Hadley & McCloy LLP*, No. 03-CV-0039, 2003 WL 22937683, at *8 (E.D.N.Y. Dec. 2, 2003) (plaintiff in lengthy interrogation by former employer but unrestrained); *Rockland Vending Corp. v. Creen*, No. 07-CV-6268, 2009 WL 2407658, at *25 (S.D.N.Y. Aug. 4, 2009) (plaintiff knew he could leave if he returned money in dispute); *Kravtsov*, 2012 WL 2719663, at *17 (plaintiff had choice of where to go other than lingering in front of courthouse).

[71]

See *Parvi v. City of Kingston*, 41 N.Y.2d 553, 557, 394 N.Y.S.2d 161, 164 (1977).

[72]

N.Y. City Admin. Code, title 10, ch. 11, § 10.

[73]

*Id.* § 10-1104.

16

*inter alia*, "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law."[74]  A crime of violence motivated by gender is "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."[75]  To state a claim under the GMVPL, a plaintiff therefore must allege "(1) the alleged act constitutes a misdemeanor or felony against the person; (2) that was perpetrated because of plaintiff's gender; (3) in part because of animus against plaintiff's gender; and (4) resulted in injury."[76]

Tisci argues that Cooper fails plausibly to allege one of the types of sex offenses covered by New York Penal Law and therefore did not make out the first element of a GMVPL claim.  That argument misstates the statutory requirement and is incorrect on its own terms. Because Cooper alleged plausibly civil claims of battery and assault – the elements of which constitute assault and menacing, respectively, under New York Penal Law[77] – he has satisfied the statutory requirement of claiming that a crime of violence occurred.  Even if he were required to allege specifically that a sex offense was committed, his allegations of Tisci, naked, laying on top of and kissing him, stripped naked, without his consent would have been sufficient.[78]  Tisci is

---

[74]

      *Id.* § 10-1103.

[75]

      *Id.*

[76]

      *Baldwin v. TMPL Lexington LLC*, No. 23 Civ. 9899, 2024 WL 3862150, at *12 (S.D.N.Y. Aug. 19, 2024).

[77]

      *See* N.Y. Penal Code § 120.00 (assault in the third degree); *id.* § 120.05 (assault in the second degree); *id.* § 120.15 (menacing in the third degree).

[78]

      *E.g.*, *id.* § 130.55 ("A person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent . . . . Sexual abuse in

mistaken also in suggesting that the alleged conduct must present a serious risk of physical injury. There is no such requirement when the plaintiff alleges a "misdemeanor or felony against the person."[79] The need for the alleged conduct to "present[] a serious risk of physical injury to another" qualifies only the second category of misdemeanor or felony that is actionable under the GMVPL, those against property.[80]

Tisci argues next that Cooper fails to allege plausibly that Tisci acted at least in part out of animus based on Cooper's gender. Cooper responds, and Tisci concedes, that any sexual assault inherently is a crime of gender-motivated violence. That response and concession are correct. The Appellate Division has made clear that:

> "Rape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged in the complaint are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent."[81]

---

the third degree is a class B misdemeanor.").

[79] N.Y. City Admin. Code, title 10, ch. 11, § 10-1103.

[80] *Id.*; *Baldwin*, 2024 WL 3862150, at *11 ("[T]he 'serious risk of physical injury' requirement only modifies the category 'misdemeanor or felony against property.'"); *see Lockhart v. United States*, 577 U.S. 347, 351 (2016) (The rule of the last antecedent "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'") (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).

[81] *Breest v. Haggis*, 180 A.D.3d 83, 94, 115 N.Y.S.3d 322, 330 (1st Dep't 2019); *see also V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) ("This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.").

There is no evidence that the Appellate Division's interpretation of the GMVPL in *Breest* is any less applicable to transgender, gay, or lesbian victims. *See* 180 A.D.3d at 89 n.1, 115 N.Y.S. at 326 n.1.

18

Cooper alleges plausibly that Tisci sexually assaulted him for substantially the same reasons as Cooper alleges plausibly claims of battery and assault. Such conduct allegedly caused Cooper physical and emotional injury.[82] Cooper's claim that Tisci violated the GMVPL thus is legally sufficient.

*The Intentional Infliction of Emotional Distress Claim*

Cooper's fifth cause of action is for intentional infliction of emotional distress ("IIED").

IIED requires "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."[83] For conduct to be sufficiently extreme and outrageous, it must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community."[84] Under New York law, however, IIED "may be invoked only as a last resort to provide relief in those circumstances where traditional theories of recovery do not."[85] All four Appellate Divisions have held that an IIED claim may not be brought when the "challenged conduct falls well within the ambit of other traditional tort liability."[86]

---

[82] Am. Compl. (Dkt 19) ¶¶ 94, 99-100.

[83] *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

[84] *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 302, 461 N.Y.S.2d 232, 236 (1983).

[85] *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (cleaned up).

[86] *Id.*; *see also Muhammad*, 595 F.3d at 432.

19

As Cooper has stated legally sufficient claims of battery, assault, and false imprisonment with respect to the same conduct for which he alleges IIED, as much of Tisci's motion as seeks dismissal of Cooper's IIED cause of action will be granted.

*Attorneys' Fees and Punitive Damages*

Coopers's sixth and seventh causes of action are for attorneys' fees and punitive damages, respectively.

It is undisputed here that Cooper seeks attorneys' fees and punitive damages as forms of relief rather than asserting such claims as independent causes of action. As requests for attorneys' fees and punitive damages are requests for relief rather than independent causes of action,[87] the Court will grant Tisci's motion to dismiss Cooper's causes of action for attorneys' fees and punitive damages without disturbing Cooper's requests for the same in his prayer for relief.

### *Conclusion*

For the foregoing reasons, Tisci's motion to dismiss the amended complaint (Dkt 24) is granted to the extent that Counts 5 through 7 are dismissed and is otherwise denied. Cooper may continue to seek attorneys' fees and punitive damages as remedies for his surviving causes of action.

---

[87] *La Porta v. Alacra, Inc.*, 142 A.D.3d 851, 853, 38 N.Y.S.3d 20, 23 (1st Dep't 2016); *Aronis v. TLC Vision Ctrs., Inc.*, 49 A.D.3d 576, 577, 853 N.Y.S.2d 621, 622 (2d Dep't 2008); *Saha v. Record*, 177 A.D.2d 763, 766, 575 N.Y.S.2d 986, 989 (3d Dep't 1991); *Moran v. Travelers Ins. Co.*, 197 A.D.2d 928, 928, 604 N.Y.S.2d 851, 851 (4th Dep't 1993); *see Rocanova v. Equitable Life Assurance Soc'y of the United States*, 83 N.Y.2d 603, 616-17, 612 N.Y.S.2d 339, 344-45 (1994).

20

SO ORDERED.

Dated:        December 3, 2025

Lewis A. Kaplan
United States District Judge